UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northwest Airlines, Inc.,
a Minnesota corporation,

Civ. File No. 00-889 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Autobahn Internet Services, Inc.,
an Oregon corporation,

Defendant.

---

This matter is before the Court on the Motion to Dismiss, or in the alternative, to Transfer Venue, filed by Defendant Autobahn Internet Services ("Autobahn"). Autobahn contends that this Court does not have personal jurisdiction over Autobahn, and that therefore the matter must be dismissed. For the reasons that follow, the Court will grant the Motion to Dismiss.

**BACKGROUND**

Northwest Airlines ("Northwest") filed an eight-count Complaint against Autobahn on April 7, 2000. In that Complaint, Northwest claims that Autobahn's use of the internet domain name "northwest.com" infringes on Northwest's trademarks and thus violates several sections of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c). (Compl. Counts I - III.) Northwest also raises claims of "Cybersqatting" in violation of 15 U.S.C. § 1125(d) (Id.

FILED NOV 22 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD NOV 22 2000
DEPUTY CLERK

Count IV); violations of various Minnesota statutes (Id. Counts V-V [sic][1]); and common law trade name infringement and unfair competition (Id. Counts VI-VII). Autobahn contends that its contacts with Minnesota are not sufficient for this Court to exercise personal jurisdiction.

Autobahn is an internet services company headquartered in Portland, Oregon. Autobahn registered the domain name northwest.com in 1995. Northwest maintains its own website at nwa.com, and has never attempted to register the name northwest.com. Initially, northwest.com simply featured Autobahn's internet services. In March of 2000, however, Autobahn sold the name to Northwest.com, Inc., which has the same officers and directors as Autobahn, and shares the same office space. After the sale, the site became an information site for travel and tourism in the Pacific Northwest.[2]

**DISCUSSION**

When reviewing a motion to dismiss for lack of personal jurisdiction, the Court should take as true the plaintiff's allegations and evidence supporting jurisdiction. Northwest Airlines, Inc. v. Friday, 617 N.W.2d 590, 592 (Minn. Ct. App. 2000). As the non-moving party, Northwest need only make a prima facie showing of jurisdiction. Dakota Indus., Inc.

---

[1] The Counts of Northwest's Complaint are misnumbered, so that there are two Counts denominated Count V.

[2] The Court notes with interest the recent decision of the Internet Corporation for Assigned Names and Numbers to approve seven new domain name suffixes, including ".aero" for the airline industry and ".info" for general use. Seven More Internet Domain Suffixes Approved, Minneapolis Star-Tribune, Nov. 17, 2000. This decision may for all practical purposes render moot Northwest's claim to the northwest.com domain name.

v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir.1991). In this case, the evidence submitted by Northwest shows that the Court does not have jurisdiction over Autobahn.

The Due Process Clause of the Fourteenth Amendment requires that Autobahn have "minimum contacts" with Minnesota in order for the Court to exercise jurisdiction over Autobahn. International Shoe Co. v. Washington, 326 U.S. 310, 315 (1945). Autobahn must have "purposely avail[ed] itself of conducting activities within" Minnesota in order for courts of this state to have jurisdiction over it. Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Analysis of jurisdiction under Minnesota's long-arm statute is coextensive with the Due Process analysis. Domtar, Inc. v. Niagara Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995).

To determine whether a defendant has the minimum contacts required by the Constitution and Minnesota law, courts should consider: (1) the quantity of defendant's contacts; (2) the nature and quality of those contacts; (3) the connection between those contacts and the cause of action; (4) Minnesota's interest in providing a forum; and (5) the convenience of the parties. State v. Granite Gate Resorts, 568 N.W.2d 715, 718 (Minn. Ct. App. 1997), aff'd, 576 N.W.2d 747 (Minn. 1998). However, the first three factors are of primary importance. Id.

**A. Quantity of Contacts**

Northwest claims that Autobahn has the requisite minimum contacts with Minnesota because Autobahn's agent ostensibly made two telephone calls to Northwest in Minnesota

to offer to sell the domain name,[3] and Autobahn's Secretary/Treasurer sent an e-mail to Northwest in Minnesota. Even taking the facts as Northwest represents them, these contacts do not rise to the level of "minimum contacts" with Minnesota.[4] Nor do the contacts constitute "purposeful availment." Northwest argues that courts have found jurisdiction based on far fewer contacts than Autobahn's. See, e.g., McRae's, Inc. v. Hussain, 105 F. Supp.2d 594 (S.D. Miss. 2000) (exercising jurisdiction over defendant who made one telephone call into forum). Contrary to Northwest's assertions, McRae's is not on point. In that case, the defendant registered several domain names, all of which infringed on the plaintiff's trademarks, for the purpose of extorting money from the plaintiff. See id. at 595 & n.2. Although the defendant in McRae's made only one direct telephone call into the forum state, his actions were clearly directed towards the forum. As will be discussed in more detail below, such cyberpiracy is not present here. The quantity of Autobahn's contacts

---

[3] Northwest claims that John Still, a financial consultant employed by Autobahn, called Northwest early this year to offer to sell the northwest.com domain name. (Ficek Aff. ¶ 2.) Still's affidavit claims that he contacted Northwest only as part of a survey to ascertain the potential value of the domain name, so that Autobahn could list the name as an asset for the purpose of securing a Small Business Association loan. (Still Aff. ¶¶ 3-4.) Still insists that he did not offer to sell the name to Northwest. (Id. ¶ 4.)

[4] Northwest also points to the large number of "hits" the northwest.com website has received since June 2000. According to Northwest, it is logical to assume that some of these hits have come from Minnesota residents. (Pl.'s Opp'n Mem. at 9.) There is no evidence of this, however, and in fact the only evidence before the Court shows that the website has not had contacts from Minnesotans. (McKeel Aff. ¶ 9.) Jurisdiction may not be founded on conjecture.

with Minnesota is not sufficient for the exercise of jurisdiction.

**B. Quality of Contacts/Connection to Cause of Action**

Even where the defendant's contacts are minimal, jurisdiction may be appropriate if the nature and quality of those contacts indicate that the defendant purposely availed itself of the laws and protections of the forum. See Trident Enters. Int'l, Inc. v. Kemp & George, Inc., 502 N.W.2d 411, 415 (Minn. Ct. App. 1993). When evaluating the quality of contacts in the context of the Internet, courts draw a distinction between interactive websites and passive websites. See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) (finding jurisdiction over interactive site); Bensusan Restaurant Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996) (declining jurisdiction over passive site); see also Millennium Enters., Inc. v. Millennium Music, 33 F. Supp.2d 907, 913-20 (D. Or. 1999) (collecting cases). Courts are more likely to find jurisdiction if the website is interactive, that is, if it offers goods or services for sale, or maintains a list of users, or the like.

Northwest claims that Autobahn's website is interactive because a visitor to the site may click on one of the site's advertisers, such as an advertisement for a travel agency, and through that advertiser's website may book airline reservations or hotel reservations. Jurisdiction based on the interactivity of the website's advertiser's website, however, is too tenuous. Personal jurisdiction must be based on Autobahn's contacts with the forum, not on Autobahn's advertiser's contacts with the forum. In this case, it is clear that Autobahn's website is passive, not interactive, and that it is in no way directed towards residents of

Minnesota, or even towards potential customers of Northwest.

Northwest also claims that Autobahn's contacts are sufficient for the exercise of jurisdiction because the effects of Autobahn's conduct are being felt in Minnesota. See Calder v. Jones, 465 U.S. 783 (1984) (setting out the "effects" test). The effects test applies when the defendant directed its actions towards the forum, or when the defendant intended that its actions would cause harm in the forum. See Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410 (7th Cir. 1994). The effects test examines both the quality of the contacts and the connection between those contacts and the cause of action.

Northwest asserts that the effects test applies because the Complaint contains a claim that Autobahn violated the Anticybersquatting Consumer Protection Act. (Compl. Count IV.) In this claim, Northwest alleges that Autobahn registered the northwest.com domain name with the bad faith intent to profit from Northwest's trademarks. (Compl. ¶ 38.) Therefore, following Northwest's reasoning, Autobahn intended to harm Northwest in Minnesota by illegal cybersquatting, and jurisdiction is appropriate.

Only two pieces of evidence arguably support Northwest's cybersquatting claim: the telephone calls from Autobahn's agent in December 1999 and January 2000, and the e-mail from Autobahn's secretary-treasurer in March 2000. Even assuming that Autobahn's agent did offer to sell the domain name to Northwest, the undisputed contents of the e-mail establish that Autobahn in fact did not want to sell the domain name. (Kelly Aff. Ex. A.)

Northwest concedes that Autobahn registered the northwest.com domain name in 1995, more than five years before this lawsuit commenced. There is no evidence that Autobahn contacted Northwest any time prior to December 1999 to attempt to sell the domain name, and the evidence shows that Autobahn has operated a legitimate website at northwest.com since it registered that domain name. Moreover, the fact that Autobahn wanted Northwest to advertise on the website is not evidence of bad faith intent. Autobahn's website offers information about travel and tourism, and it is logical that Autobahn would attempt to secure advertising from businesses such as airlines. The Court will not presume bad faith absent evidence of the same. Northwest has offered only innuendo and tenuous logical inferences, not evidence. Northwest's cybersquatting claim cannot form the basis for this Court's exercise of jurisdiction.

**D. State's Interest/Convenience of Parties**

The factors discussed above make clear that this Court does not have jurisdiction over Autobahn. Because those factors are of primary importance in the jurisdiction analysis, see Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983), the Court need not evaluate the remaining two factors.

## CONCLUSION

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court grants Defendant's Motion to Dismiss. Defendant's alternative Motion to Transfer Venue is denied as moot.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is (Clerk Doc. No. 10) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 21, 2000

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: NOV 22 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*